One might think it's coffee break time, so we're going to deal with a drinking cup in this next case. Munchkins v. Luv N' Care, 2017-11-79, Mr. McCallum. Thank you, Your Honors. May it please the Court. The board's error in this case is really rather simple. The claimed platform in the container at issue cannot be placed between the shoulder and the neck of the container as the board construed the patent. The platform must be disposed on or on top of in the same vertical space as the shoulder. The error is really that simple. The error can specifically be traced to the board's erroneous construction of the platform and the shoulder limitations. But the board's construction really triggered a vast number of inconsistencies in this patent, not the least of which are the fact that under the board's construction, the claims exclude not only the preferred embodiment but... Can you explain that? I guess I'm having a hard time seeing why the board's construction simply doesn't encompass but go beyond the preferred embodiment. In what way does it exclude the preferred embodiment? The claims use the term shoulder and the specification uses the term wing. Our position is those two are one and the same thing. It's clear from the claims and the spec that those two are one and the same. The board found that they're not the same, that they're different. Right, but different in the particular sense if I'm remembering the page of the board's opinion that shoulder is not limited to wing. But I didn't see anything where the board's understanding of shoulder excluded the wing. I think the board's finding was actually that those are two different structures simply because they're two different words. If they're two different structures... Can you point me to something? You also had a related point that Love and Care at some point conceded that its view of shoulder excluded the embodiments. The board's decision, if we look at appendix page 7, where it says we're not persuaded by the argument that shoulder is used in the claims has the same meaning as wings as used elsewhere in the spec. The drafters intend the claims to be limited to the preferred embodiment. They would have used that term. Right, and that's exactly the language I had in mind. That language does not exclude wings from shoulders. It simply says shoulders are not limited to wings. In due respect, that was not our understanding of the terminology there. Really, there's no other way to construe the shoulder other than that it is the wing. Anything else is an improper construction. To your point about LNC's statement on that issue... The board held that the wings of the shoulders are not interchangeable. Right, right. That's right. There's clearly a different scope there that the board had in mind. Really, the point being that the specification places the platform on the wing. The claims place the platform on the shoulder. If those two things are different structures, you've got the platform in different places in the claims than you do in the specification. Judge Taranto, to your point, Appendix 3449 is counsel for LNC stating on the record that maybe they changed the word cup wing when they wrote the claims and they decided to call it a shoulder. I'm sorry, what page are you reading? This is 3449 of the appendix. Because that's the only thing that has a platform sitting on it. There is no other part of this patent where there's a platform on top of anything else. So if the claim is going to be construed to read on this specification and on these drawings, that has to be the shoulder. And that's true. We would agree with that statement. Your argument is that the platform may not be located between the shoulder and the neck. That's correct. But when you look at the claim, the shoulder is below the neck and the platform is disposed on the shoulder, which makes it between the neck and the shoulder. I think what we're talking about here when we talk about how these things are positioned, if you look at LNC's position, is really that we're talking about a linear between. So at the lower portion you have a shoulder and then you have a platform and there's no overlap between those two things and then you have the neck. Whereas what we're saying is and what the patent says uniformly, there is no description anywhere in the patent of a platform between the shoulder and the neck. And there is no depiction in any of the figures of the patent of a platform between the shoulder and the neck. It has to be on top of it. Because the specification doesn't support the claim. It's a sign that the board misconstrued the claims and really divorced the claims wholly from the specification. The far more logical way to read this patent and these claims is consistent with the way it's described in the specification. We don't have to rely on the specification alone. I want to point to a few things in the claims. I know a lot of focus has been placed on the shoulder and the wing, but that's only one way to get there. Another way to get there is through the claim language which simply says that the platform is disposed on the shoulder. The plain meaning of that language is on top of and we know that because the same disposed on language is used in connection with the snap projection. The snap projection is disposed on the platform. There's no dispute in this case that in that context the snap projection must be placed on top of the platform. In fact, as we noted in our briefs, Council for LNC has admitted that the entire purpose of the platform is to elevate the snap projection so that it can engage a feature on the lid and enable the clicking function of the invention. It makes no sense to construe the disposed on language clearly in the context of the snap projection and the platform differently from the way you would construe disposed on in the context of the platform and the shoulder, but that's precisely what the board did here. You can also look to Claim 5 and Claim 6 and get to the same spot. Claim 5 is a dependent claim. It further elaborates on the positioning of the snap projection. Claim 5 says it claims a snap projection that extends inward to a second end adjacent to an inner end of the shoulder adjacent to the neck. The inner end of the shoulder is adjacent to the neck in Claim 5. Now, certainly in our view that means that the neck joins the shoulder, but at bare minimum we know that there's not a platform wedged in between there, because otherwise the snap projection would be adjacent to the platform and not to the neck. That claim reinforces our position as well, again, undercuts the board's construction. Claim 6 further highlights that point. That claim calls out a gap is provided between the second end of the snap projection and the neck, but because that's an added limitation over Claim 5, we know Claim 5, through claim differentiation, allows for there to be no gap between the snap projection and the neck. If there's no gap between the snap projection and the neck, there can be no gap between the shoulder and the neck, and therefore no platform between the shoulder and the neck. Finally, in the claims, the use of the phrase upper end also undercuts the board's construction, because we know from the claims that the neck, both the neck and the shoulder, extend from and join at the upper end of the container. The neck goes upward from the upper end, the shoulder goes radially outward from the upper end, and they join at that point. So, once again, no platform can be between the shoulder and the neck. All of that is perfectly consistent with the specification, which, as I mentioned, never discloses an embodiment, never even hints at an embodiment of the invention where the platform is between the shoulder and the neck. I don't have much argument about the snap projection. I may have misspoke. Did I say snap projection there? Just looking at the prior art, which is fairly old, one would think that the snap projection is the modern benefit, but that's not what I'm hearing the argument about. The benefit here really goes to kind of the grip of the two driving objectives here were the click lock feature, the audible sound that's created when you are sufficiently tightened, and the grip ability, which is why you have these wings to give you leverage to twist, make it easier to hold onto and twist. With respect to the clicking sound, that really is where, in the heart of this issue here, where the layered construction of the shoulder, the platform, and the snap projection come into play because you have these wings, practically speaking, shoulders, that are meant to allow the user to hold onto and grip easily, and so you have these rounded shoulders. Well, in order for that to be able to engage the lid, you need to prop it up, and so this is why you have the platform on top of the shoulder, which gives you, in a preferred embodiment, at least a level surface to work with, and you put the snap projection on top of that. That enables you to engage your click lock function. I think that's all I have on the original claims. Are you arguing the claim construction that was argued before the district court? I'm sorry, could you repeat that? Are you arguing the same claim construction that you argued before the district court? Yeah, we're proposing it's effectively the same construction that we offered before the district court. And the board considered that, and it said that that construction is erroneous because the platform is to be at least substantially flat, and you're relying on the specification that says it preferably should be flat. And if your construction is adopted, then any change in the contour of the shoulder would constitute a platform, and the board found that that is an impermissible enlargement of the scope of the pen. I want to make one thing clear. The board addressed that issue only in the context of our conditional alternative motion to amend. That issue does not affect the original claims. Moving to that issue. That affects the construction. That's still the construction issue that we're talking about. And that issue, again, was not the issue of broadening, which is what the board based or the context that the board addressed that issue in, obviously is relevant to the amendment, but is not relevant. The board did not address that issue in the context of the original claim. On the amendment and the platform issue, do I understand your position to be that even if you lose on, what is it, Claims 1 through 7, the issued claims, that nevertheless you're entitled to have a vacator of the denial of the amendment because that denial rested entirely on a claim construction of platform in the original claims as requiring substantial flatness, and that's plainly wrong because that was an express dependent claim, and therefore the only basis that's given to date by the board for denying the amendment rests on an erroneous claim construction, and that has to be vacated. That's correct, Your Honor. That's correct. And I think with that, I'll reserve what time I have left for rebuttal. We will save it for you, Counsel. Mr. Manzo. Thank you, Your Honor. Pleasure to be here today to talk about wings and shoulders. We'll see how well you shoulder your argument. I'll try to wing it. You guys have this prepared. I think the court has a very easy decision to make. Assuming arguendo, the truth of what Munchkin is arguing, that the specification says the shoulder comes up to the neck, and I disagree, that still leads us into the problem that that is not what the claims say, and if you look at the Supreme Court ruling in McCarty, it describes exactly this case. If you start bringing in principles from the specification. Are we going to move to a different body part now, to the nose? Really, I mean, that kind of general stuff doesn't help this case. The question is why, if you look at the specification, and you see that there's been this double change of language from cup main body to neck, and from wing to shoulder, and try to understand what shoulder is, in the context of the other language, including this interesting platform disposed on language, it really doesn't have to be limited to the only thing really described in the spec, which is a wing that abuts the neck. If I understand Your Honor's question, let us assume that the wing and the shoulder are overlapping, or one and the same. I think where we look at, if I could invite Your Honor's attention to appendix page 17. This is going to speak to both issues in the case. Is it in the board opinion? That is in the board opinion. So this shows at the top of the page in single-spaced format, the proposed claim eight. And the problem here is that in claim eight, the second element says, we're in an outer surface of an upper end of the container extends below the neck, radially outward, to define a shoulder. Then if you look at the part that's underscored. You should include a word that at least seems to me potentially significant, which I think maybe you just skipped, the word extends. Extends below. It doesn't just say it is below. It extends below, which might suggest it's coming out of, or might not. But that's not the end of the analysis. Well, I admit that one might consider that as a possibility, but to say that something extends below does not at all mean in the normal English language, what the underscored part is on the fourth line of underscoring, which is the part that they want to clarify now. Now they want to say that we're in the prior clause means that the outer surface extends down from the neck, radially outward. And I submit to you that extending down from the neck is quite different from saying extends below the neck, radially outward. And if you honors look at the prior art, both of the references relied on are complete anticipations. For the reasons the board explained, Whiteman has a body with an upper end and has a neck. No dispute that it has a snap projection. There's a platform, and I say the platform is disposed on the shoulder. The board agrees. And the shoulder is extending radially outward below the neck. Can I ask you this is I guess while we're on this subject, it's a slight detour. But why did the board not say anything about your alternative interpretations of Atkins and Whiteman, which I will tell you strike me as a stronger version of anticipation than the version that the board adopted? I don't know why they didn't react to that, Your Honor. I wish they had. But I think that two anticipations are enough. And as for the argument of the platform has to be disposed on the shoulder. If, as I said in our brief, if you look at Whiteman, it is disposed on the shoulder. It's disposed on the top of the shoulder, in fact. The pictures show that. Figure two of Whiteman shows that. Let me just see if I can locate that. It's in our brief. Page nine of the appendix. Page nine of the appendix is good. But that doesn't show you figure two of the brief of our brief. Apologies, Your Honor. If one were to look at our at the red brief. Page 46. That shows figure two of Whiteman. And the shoulder is sort of a flying saucer outline when viewed from above. And you can see that it's sitting on top of the shoulder. The shoulder would be number 10. And the platform is number 11. It's sitting literally on top of the shoulder. This meets the claim even as Munchkin wants to construe it. Now, again, this is a simple case where Munchkin wants to read into the claim language from the specification or limitations from the specification that simply were not stated in the claim. And they realized that when they sought to amend claim eight to say, we want to make that part narrower to be more particular, saying it has to connect to the neck. Well, fine. Let's assume that there is specification support for that, and they would have the opportunity to make that claim. But the problem with claim eight, the more severe problem with claim eight, is now the platform problem. And I think Your Honor appreciated that they want to change a platform into basically anything under the sun that changes the contour. And I don't think you can help but reach the conclusion that that is broadening. At least the platform has some sort of a meaning with a degree of flatness, and there is substantial evidence in the record to support that, namely a dictionary definition and the figures. And there is no definition in the claims, there's no example anywhere in the specification that says otherwise. Isn't there a rather strong claim differentiation argument about substantially flat in the platform? What is it, claim two or something? Yes, there is some claim differentiation argument, Your Honor, but that doesn't mean that they are entitled. You can't invent. Claim three. The only difference is, right, it's claim two, where the platform is substantially flat. Very well. But that does not mean that there is disclosure in the specification of one that is not generally flat. And when you tell the world of cup-making people that there's a platform, I don't think of a pyramid as a platform. I think of something generally flat. And now the patent owner wants to change that to say anything that changes the contour, anything at all. There's no example whatsoever in the specification. And whether or not, that's just one problem, which we don't even reach in this appeal, because the board decided there was a broadening, it was a broadening recitation. And you're, by statute, not allowed to broaden the claim. Just tell me if I'm wrong about this. Wasn't the only ground that the board found broadening on the ground that the revised, the proposed revised language is not that, which is a, it didn't say that the broad language covers pyramids without a top surface or something that goes way beyond anything that could be considered a platform. It just said it goes beyond substantially flat. That's approximately correct, Your Honor. I think that they said they even relaxed their interpretation of the platform to say generally flat. And they compared generally flat, if I remember correctly, with what's in this new claim, which doesn't even include flat. There's no degree of flatness in this proposed Claim 8 platform. And that's the problem. There are many, many other problems that the board did not reach with regard to Claim 8. There's other priorities that we haven't talked about. And I want to add one little comment about disposed on. Counsel raised the final limitation of the claim with regard to disposed on the platform. But the rest of that claim goes on to define what it means to be disposed on. It says wherein the snap projection extends upward, away from the platform. I think he was focused on the element that talks about what the platform is disposed on, namely the shoulder. Yes, he was. But he was using the language disposed on from the fifth claim element, the last one, to say that it should mean the same thing as the prior element, so that the terms should be used consistently. And in the fourth claim element, it says disposed on the shoulder. And in the fifth claim element, it says disposed on the platform. We are in a bunch more stuff. So the two are not really equivalent. And, Judge, as I said in my brief, my nose is certainly disposed on my face, but it is not up here on the top of my head. I think that the board was correct. This was the simplest reason to deny entry of Claim 8. I think that the board had to find the broadest reasonable interpretation and did. And I have not seen any argument as to why the board reached an erroneous conclusion as to what the broadest reasonable interpretation is. What I hear is a Phillips argument. And in PPC Broadband, this court explained very clearly the two are different. Phillips might be one interpretation, but that is not what is used at the PTAB or in normal examination, and it gave the reasons for doing that. And it said the board's construction is not unreasonable and affirmed on that basis. They explained the reasons why there is two different standards of interpretation for the claim language. That applies here. The claims as written read on the prior art. And Munchkin wants to import language from the specification to distinguish the claims over prior art that anticipates the claims. That is improper. It's a specification-based argument. And the claims are the meets and bounds of the invention, not the specification. Do you agree or disagree with Mr. McCallum that all embodiments described in the abutting the neck? I guess there you would call it the wing abutting what I ask you to take for purposes of this question as cup main body 23. I do not. The wing is described as achieving one of the objectives of this disclosure, and Mr. McCallum even talked about that by saying it allows torque to be applied when you're screwing down the cap. And if I may just digress for one second, the Munchkin patent was the second comer. Earlier, and this is in our brief, Playtex had already come out with a snap-to-close cup. Munchkin said, well, we've got to have one also. And the reason for the snap-to-close is so that the problem was that parents or caretakers were finding liquid was coming out of the cup when they're giving it to their toddlers. And they went back to Playtex and said, how come your cup leaks? And the answer is because you didn't tighten the cup enough. Solution, let's provide a way so that parents can know the cup lid is closed enough. So what do they do? And here what happens is they, Munchkin, provide wings. And the specification talks about an objective being to tighten the wings, to tighten the cup by being able to apply torque to the wings. Now, fine, let's assume that the wing is the shoulder. It makes no sense whatsoever to put a wing as close as you can get it to the neck because that would be the thing you would not do. You want the wing to be as far away from the neck as possible. And the specification even says the wing extends outward from the side of the cup. That makes sense to me. If I want to maximize the amount of torque I can apply to a circular body, I'm going to go out as far as I can. That's like putting a wrench on a lid that you are trying to open. The longer the lever, the better you're going to be, the more torque you can apply. And when you look at figure 11 of this patent, your honors, and I have this in my brief, the platform is number 68. If claim one reads on this embodiment, then the shoulder has to be under that. And the shoulder, if I look at figure 11, the shoulder is nowhere near the neck. And the answer that Munchkin provides is, well, that's not numbered.  And my response to that is, but I can see it in figure 11, as plain as the nose on my face. It is also as plain as the eyes in my head that your time has succeeded. Do you have a final thought? No, your honor. I request the court affirm the board ruling. Thank you, your honors. Thank you, Mr. Manzo. Mr. McAllen has two minutes plus rebuttal time. Thank you, your honors. A couple points. We're not asking the board or this court to import any limitations from the specification. I went through five different claim limitations in claim one that get you to our claim construction and that undercut the board's claim construction in this case. Also, on the issue of which embodiment these claims must read on, we have to remember that the applicants during prosecution elected species one. When asked to do so, species one corresponds to the preferred embodiment at figures one through 11. So a bare minimum, these claims must at least read on the preferred embodiment, if not be limited to it. Regarding the shoulder and the wing, we certainly believe the only reasonable way to read this patent is to read those features as one and the same. Otherwise, who knows what the shoulder is. That issue is not dispositive of the claim construction issue because, as I mentioned earlier, we have a number of different claim limitations that you can run through to get to the same point, including most notably the platform limitation is disposed on the shoulder. Regarding Mr. Manzo's argument about the wing and where he thinks it should practically be, figure five of the specification tells you exactly where the wing is. It gives you the distance, that distance D3 that it extends. It extends from the neck all the way out to the end. That's the wing. That's the shoulder. We know through that figure alone that we don't have to worry about Mr. Manzo's argument about the shoulder not extending far enough out or being tucked in close to the neck because it's the whole thing and it starts at the neck. Love and Care and Mr. Manzo would also ask this court to fill the void that the board's construction is created by literally inventing a feature in this patent called the annular surface that appears nowhere in the claims. It appears nowhere in the specification. It's not numbered. It's not depicted in the figures, and that is important. They would have this court place invention-altering significance on a made-up feature. We would submit that Munchkin's construction, which makes sense of both the claims and the spec together, is the far more proper way to construe these claims. A final point about the broadening argument that Mr. Manzo made, it's notable that he would like to have it both ways, say that it's simply something in the specification. There's no disclosure in the specification of a generally flat, but there's no disclosure in the specification of a platform being next to the shoulder as opposed to on top of the shoulder. You can't have those two issues differently when you're dealing with the original claims versus the motion to amend. Thank you, counsel. We'll take the case on the revised. Thank you, Your Honor.